[Civ. No. 6321. Third Appellate District.—March 4, 1940.]

H. A. GULDSTRAND, Respondent, v. JOHNSON, CARVELL & MURPHY (a Corporation), Appellant.

Anderson & Anderson for Appellant.

Roland Rich Woolley and Joseph F. Rank for Respondent.

THOMPSON, J.—The plaintiff recovered judgment for $1739.07 in a suit for an accounting in a business enterprise. From that judgment the defendant has appealed contending that it was not credited with money advanced by it for the purchase of stock and materials used in conducting the business.

The plaintiff represented certain manufacturers of gummed tape, cloth labels and stamp devices in Los Angeles where he was engaged in the business of preparing and marketing that merchandise. The defendant is a corporation with an established mercantile brokerage business in the same city. The plaintiff had neither the capital nor the business prestige to conduct a successful enterprise of that nature. He desired the benefit of defendant's financial aid, experience, standing, advice, sales department, plant, equipment and organization to carry on his business. For that purpose the plaintiff and defendant entered into a written agreement on June 26, 1928, by the terms of which they were to operate plaintiff's business at the plant of the defendant, as a joint adventure or a limited partnership, for an indefinite period of time. That agreement reads in part:

"Johnson, Carvell & Murphy are to furnish space in their offices for H. A. Guldstrand and any assistants that later on may be necessary; do all bookkeeping and stenographic work, pay all telegraph and telephone bills, postage, stationery and other items incidental to efficient conduct of the business.

"Johnson, Carvell & Murphy further agree to furnish the necessary capital and purchase the products covered by this agreement in sufficient quantities to obtain the lowest cost price, and to furnish storage space for such stock as good judgment dictates should be carried.

"Johnson, Carvell & Murphy will do all billing, collecting, buying and selling with the cooperation of H. A. Guldstrand and the proceeds derived from this business shall be allocated as follows:

"1. A monthly payment to Johnson, Carvell & Murphy of Two Hundred and Fifty Dollars ($250.00).

"2. A monthly auto allowance to H. A. Guldstrand of Sixty Dollars ($60.00).

"3. The remaining gross profits to be credited to a reserve fund and to be divided equally between Johnson, Carvell & Murphy and H. A. Guldstrand on July 1 and January 1st of each year.

"4. H. A. Guldstrand is to be allowed to draw Two Hundred Dollars ($200.00) per month, which amount is to be charged against his portion of the reserve fund.

"H. A. Guldstrand agrees to devote his entire time and ability to soliciting the trade on the various items named herein and on any other items that may be added to his department."

The business was continued until January 18, 1934, when it was terminated by mutual consent of the parties. Statements were made and the net proceeds of the business were divided satisfactorily between the parties semiannually according to the terms of the agreement to January 1, 1933. This appeal does not involve business transactions prior to that date. It is conceded the contract was fulfilled except as to the receipts of 1933.

The court found that the surplus fund of the enterprise, which accumulated during the year of 1933, amounted to $3,951.14, in which sum the respective parties were entitled to participate in equal shares. That figure is not disputed. That amount represents the gross income from the business in 1933, less the aggregate costs of operation. It does not contain a deduction of any part of the money expended by the defendant during that year for purchasing stock and materials for use in the business, which amounted to a total sum of $4,917.96. The entire controversy on appeal is over the question as to whether the defendant is entitled to credit for the money it expended in purchasing necessary stock and materials for the manufacture and sale of the products of the business. The court found that the defendant was required by the provisions of the second paragraph of the contract above quoted to contribute and supply the capital necessary to make all purchases of stock and materials, and that it was not entitled to a refund of the money spent for that purpose. The appellant contends that finding is

not supported by the evidence. The solution of that question depends solely on a construction of the written contract.

We are of the opinion the findings and judgment are not supported by the evidence. Our interpretation of the language of the contract convinces us that the defendant agreed to merely *advance* the necessary capital to purchase stock and materials to be used in the business and that it is entitled to credit on an accounting for such expenditures. The language of that paragraph, sound business principles and the construction placed upon the contract by the parties thereto in all previous semiannual settlements of which we have a record, supports that construction of the agreement. The paragraph in question declares that defendant agrees "to furnish the necessary capital and purchase the products covered by this agreement *in sufficient quantities to obtain the lowest cost price,* and to furnish storage space for such stock as good judgment dictates should be carried". The word "furnish" as it is used in that paragraph merely means that the defendant agreed to supply or advance the money necessary to purchase the stock or materials for carrying on the business. It does not mean that the defendant is required to contribute that money to the business without the right to receive credit therefor in the semiannual settlements. The paragraph clearly implies that construction, for it reads that the capital will be furnished so that the materials necessary to be used in the business may be purchased "in sufficient quantities to *obtain the lowest cost price*". If the defendant was to supply that cost money without the right to recover it in subsequent settlements, the plaintiff would not be interested in getting the stock and materials at "the lowest cost price". He would not then care what the defendant paid for the materials. Moreover, it would have been very easy to have provided that the defendant should pay and contribute to the operating of the business *all costs and expenses thereof,* if that were intended by the parties. The contract clearly indicates that was not the intention of the parties, for the first paragraph above quoted specifies exactly what items of cost and maintenance of the business were to be borne by the defendant. Later the contract provides for the payment to the plaintiff of $60 per month in lieu of his cost of operating an automobile, and that he was permitted to withdraw for his own use from the reserve fund the further sum of

$200 each month. These sums were regularly paid to him. It appears that the cost of stock and materials purchased by the defendant amounted to almost one-third of the gross receipts derived from the sales of merchandise. It seems unreasonable to assume that the defendant, with its established prestige, plant and organization, would assume all hazard of losses and agree to contribute to a speculative infant industry everything necessary to conduct the business, together with all cost of machinery, supplies and materials. It is clear that the parties did not so construe the contract. In the last two semi-annual statements which were rendered, and upon the basis of which the plaintiff was paid, items for the cost of materials purchased were clearly credited to the defendant. In the statement for the first six months of 1933, the defendant was credited with *"cost of goods sold"*, $2,617.38. The plaintiff failed to complain of that credit to the defendant at the time of the settlement. The statement of the last six months' period . contained a similar credit item of $2,300.58. Statements of the previous four and a half years' business are not included in the record before us. But we assume that it was the custom of the defendant in rendering these semiannual statements to include therein credit for all expenditures of capital for the purchase of stock and materials. At least the last two statements which are in evidence clearly show that the parties construed the contract to mean that the defendant merely advanced the necessary funds with which to purchase the supplies so that they could buy them in large quantities and thereby procure the "lowest cost price", and that the defendant should therefore receive credit and become reimbursed for such expenditures.

Following the preceding construction of the contract, it appears that the plaintiff who was advanced $200 each month from the reserve fund, with which sums he should be charged, is entitled to no further payment from the balance of that fund which is on hand, since the aggregate sum of money expended by the defendant in purchasing stock and materials exceeds the amount remaining in that reserve fund. There is no other money or property on hand.

The judgment is reversed and the court is directed to render judgment against the plaintiff to the effect that he may take nothing by his suit.

Pullen, P. J., and Tuttle, J., concurred.